```
JAMES McNAIR THOMPSON
SBN 67807
LAW OFFICES OF JAMES McNAIR THOMPSON
PO BOX 636
LOS GATOS CA 95031
(408) 358-6047
Attorney for Misako Yamaguchi
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    vs.<br><br>MISAKO YAMAGUCHI,<br><br>    Defendant | Case No. 15 – CR – 00395 – BLF<br><br>DECLARATIONS IN SUPPORT OF MOTION TO WITHDRAW PLEA |

Defendant Yamaguchi submits the following declarations:

1. Declaration of Carl Lindstrom.

2. Declaration of Valerie Anne Zukin

3. Declaration of James McNair Thompson

# DECLARATION 1
# CARL LINDSTROM

JAMES McNAIR THOMPSON
SBN 67807
LAW OFFICES OF JAMES McNAIR THOMPSON
PO BOX 636
LOS GATOS CA 95031
(408) 358-6047
Attorney for Misako Yamaguchi

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>    vs.<br><br>MISAKO YAMAGUCHI,<br><br>      Defendant | Case No. 15 – CR – 00395 – BLF<br><br>DECLARATION OF CARL ALFRED LINDSTROM JR |

I, Carl Lindstrom, declare:

1. I am now and at all relevant times have been an attorney duly licensed to practice law in the State of California.

2. After her sentencing, Misako Yamaguchi retained me to represent her regarding the civil judgment that was entered against her based on the guilty plea that she entered in the criminal matter. As part of my representation, I inquired into the propriety of her conviction, including her plea agreement.

3. In furtherance of that inquiry, I contacted Kirk Elliot, Ms. Yamaguchi's attorney at the time of the execution of the plea agreement, entry of the plea and sentencing.

DECLARATION OF CARL ALFRED LINDSTROM JR                                                                 Page 1

4. I specifically asked Mr. Elliot whether he had advised Ms. Yamaguchi about potential adverse immigration consequences that might arise from the plea.

5. Mr. Elliot replied that he did not think there were any.

I declare under penalty of perjury that the foregoing is true and correct; executed this 12th day of October, 2017 at San Jose, California.

_____
Carl Lindstrom

DECLARATION OF CARL ALFRED LINDSTROM JR   Page 2

# DECLARATION 2

# VALERIE ANNE ZUKIN

**Declaration of Valerie Anne Zukin**

I, Valerie Anne Zukin, hereby declare the following:

1. I am an attorney licensed to practice law before the courts of the State of Pennsylvania, the Department of Justice Executive Office of Immigration Review, and the Ninth Circuit Court of Appeals. My business address is 301 Battery Street, 3rd Floor, San Francisco, California 94111. I am the Lead Attorney Coordinator for the Northern California Collaborative for Immigrant Justice at the Justice & Diversity Center of The Bar Association of San Francisco. I received my Juris Doctorate from Tulane University School of Law in 2007.

2. My practice is exclusively in the area of immigration law. During the more than ten years that I have been practicing immigration law, I estimate I have represented hundreds of individuals in proceedings before the Department of Homeland Security, the Immigration Courts, the Board of Immigration Appeals, the Department of State, the United States District Court for the Northern District of California, and the United States Court of Appeals for the Ninth Circuit. In addition, I have provided comprehensive consultations and *pro se* assistance to thousands of additional immigrants during this same period.

3. As the Lead Attorney Coordinator for the NCCIJ, a collaborative comprising approximately 18 nonprofit legal service organizations, I oversee the Attorney of the Day Program on the detained dockets and coordinate intake and referral for hundreds of detained immigrants. I also provide technical assistance and mentorship to numerous immigration attorneys, in addition to regularly planning and leading immigration law trainings that are attended by large audiences nationwide. I am a member of the National Immigration Project of the National Lawyers' Guild, the American Immigration Lawyer's Association ("AILA") and the AILA Northern California Chapter, where I serve on the Advisory Council as a *Pro Bono* Project Coordinator.

4. I have met with and interviewed Misako Yamaguchi and I am familiar with her immigration status and her 2016 federal conviction for mail fraud pursuant to 18 U.S.C.§ 1341.

5. Ms. Yamaguchi is a native and citizen of Japan. She was admitted to the United States as a lawful permanent resident (LPR) on July 8, 1992. She has two U.S. citizen children, who were born in the United States. Ms. Yamaguchi's husband is also a U.S. citizen.

6. On October 27, 2015, Ms. Yamaguchi pled guilty to a violation of 18 U.S.C.§ 1341, including a stipulation that she "defrauded [her] employer, YSA, out of approximately $309,523.98."

7. If I had been consulted prior to the time Ms. Yamaguchi pled to a violation of 18 U.S.C.§ 1341, including a stipulation to a loss amount in excess of $10,000, I would have advised her not to enter such a plea because it clearly made her inadmissible, deportable, and ineligible for most forms of relief from removal.

8. The U.S. immigration laws categorize crimes into several different categories that may render a non-citizen inadmissible (applied to individuals seeking admission into the United States) and/or deportable (applied to individuals who are already admitted to the United States), and may affect her ability to apply for any relief from deportation. Two of the main categories are "crimes

involving moral turpitude" ("CIMT") and "aggravated felonies." Some convictions fall in multiple categories and some convictions do not render one removable under any ground. The consequences for a lawful permanent resident of sustaining a conviction deemed a CIMT or an aggravated felony differ. It is, thus, of crucial importance for a criminal defense attorney representing a non-citizen client in plea negotiations to know whether an individual's potential conviction would be deemed a CIMT, an aggravated felony, or both, and whether one or more of these determinations would carry immigration consequences for the non-citizen client.

9. As discussed below, Ms. Yamaguchi's conviction under 18 U.S.C.§ 1341 carries severe immigration consequences—namely, it renders her deportable for having a fraud or deceit related aggravated felony. As explained *infra*, with her conviction as it stands, she is not eligible to apply for cancellation of removal, which is a waiver available to longtime lawful permanent residents who have been convicted of certain types of crimes. If Ms. Yamaguchi had fully understood the consequences of pleading to 18 U.S.C.§ 1341, it is highly probable that she would have attempted to negotiate a more favorable disposition or have gone to trial. A competent attorney who properly investigated the potential immigration consequences to such a plea would have so advised Ms. Yamaguchi.

10. Ms. Yamaguchi is currently serving her sentence at Federal Correctional Institution, Dublin. During her incarceration, she was served with a Notice to Appear, the charging document that initiates a removal case before the Immigration Court. Ms. Yamaguchi is charged as removable from the United States due to her 2016 conviction. Ms. Yamaguchi is currently in removal proceedings before the Executive Office for Immigration Review.

11. DHS has alleged that Ms. Yamaguchi is removable pursuant to 8 U.S.C. §1227(a)(2)(A)(iii), due to her conviction under 18 U.S.C.§ 1341, which constitutes a crime involving fraud or deceit in which the loss to the victim(s) exceeds $10,000.

12. The conviction in this case, a violation of 18 U.S.C.§ 1341, has been held to be an aggravated felony. In *Matter of Babaisakov*, 24 I&N Dec. 306 (BIA Sept. 28, 2007), the Board of Immigration Appeals held that a federal conviction for violation of 18 U.S.C. §1341, mail fraud, is an aggravated felony fraud offense for immigration purposes under INA §101(a)(43)(M)(i), 8 U.S.C. §1101(a)(43)(M)(i), where the loss to the victim exceeds $10,000. Ms. Yamaguchi not only pled guilty to having violated 18 U.S.C.§ 1341, but also, she stipulated to having "defrauded [her] employer, YSA, out of approximately $309,523.98." In *Nijhawan v. Holder*, 557 U.S. 29, 42–43 (2009), the Supreme Court held that absent evidence to the contrary, where the "defendant's own stipulation … shows that the conviction involved losses considerably greater than $10,000," the DHS would meet its burden of establishing the loss amount by the requisite clear and convincing evidence. Thus, the DHS will meet its burden as to this charge.

13. An aggravated felony conviction is a ground of deportability. An aggravated felony is the worst type of conviction that a non-citizen can suffer in terms of its impact on the ability of the non-citizen to remain in the United States. Such a conviction makes one removable (deportable) and eliminates one's eligibility for virtually every form of discretionary relief available under the immigration laws. An individual who has been convicted of an aggravated felony after November 29, 1990 is also permanently ineligible for naturalization. Immigration and Nationality Act ("INA") § 101(f)(8), 8 U.S.C. § 1101(f)(8).

14. An "aggravated felony" for immigration purposes is defined at INA § 101(a)(43), 8 U.S.C. § 1101(a)(43). The definition of an "aggravated felony" includes a crime involving fraud or deceit in which the loss to the victim(s) exceeds $10,000. INA § 101(a)(43)(M), 8 U.S.C. § 1101(a)(43)(M). The Board of Immigration Appeals has held that a violation of 18 U.S.C. §1341 involving more than $10,000 loss to the victim is categorically an aggravated felony under INA § 101(a)(43)(M). *See Matter of Babaisakov*, 24 I&N Dec. 306 (BIA Sept. 28, 2007).

15. Noncitizens convicted of aggravated felonies are statutorily barred from most forms of discretionary relief from removal.

16. Ms. Yamaguchi is ineligible for Cancellation of Removal for Certain Lawful Permanent Residents under INA §240A(a); 8 U.S.C. § 1229b(a), due to her conviction for 18 U.S.C. §1341 because it is an aggravated felony under INA §§ 101(a)(43)(M); 8 U.S.C. § 1101(a)(43)(M) and INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), which renders her statutorily ineligible under INA §240A(a)(3); 8 U.S.C. § 1229b(a).

17. Ms. Yamaguchi may also be ineligible to apply to re-adjust her status pursuant to *Negrete-Ramirez v. Holder*, 741 F.3d 1047 (9th Cir. 2014), if she was initially admitted to the United States as a permanent resident based on an Immigrant Visa that had been approved abroad through consular processing. At present, I do not have information to the contrary that could demonstrate her eligibility to re-adjust pursuant to *Negrete-Ramirez*, which held, after an in-depth analysis of the statutory language of "admitted" and "lawfully admitted for permanent residence" in INA § 212(h); 8 U.S.C. § 1182(h), that "[o]nly noncitizens who entered into the United States as LPRs are barred from eligibility to apply for the § 212(h) waiver." *Negrete-Ramirez* at 1054. Unless she is able to demonstrate that she was initially admitted to the United States in another status and subsequently adjusted her status to that of a lawful permanent resident, she would not be eligible for re-adjustment of status.

18. If I had been consulted prior to the time Ms. Yamaguchi pled to a violation of 18 U.S.C. §1341 and stipulating to a loss amount exceeding $10,000, I would have advised her about the immigration consequences set forth above.

19. Any reasonably competent attorney representing a non-citizen would know that a conviction under 18 U.S.C. §1341 with a stipulation to a loss amount exceeding $10,000 would result in a removable offense and that such a conviction would render a long-term lawful permanent resident ineligible for most relief that would otherwise have been available under another plea. Because her conviction clearly constitutes an aggravated felony, Ms. Yamaguchi is not eligible to apply for the main form of relief available to long-term permanent residents, cancellation of removal, and therefore likely faces permanent removal from the United States.

I declare under penalty of perjury that the foregoing is true and correct this 9th day of October, 2017, in San Francisco, California.


/s/ Valerie Anne Zukin
Valerie Anne Zukin

# DECLARATION 3

# JAMES McNAIR THOMPSON

JAMES McNAIR THOMPSON
SBN 67807
LAW OFFICES OF JAMES McNAIR THOMPSON
PO BOX 636
LOS GATOS CA 95031
(408) 358-6047
Attorney for Misako Yamaguchi

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 15 – CR – 00395 – BLF |
| Plaintiff, | DECLARATION OF JAMES McNAIR THOMPSON |
| vs. | |
| MISAKO YAMAGUCHI, | |
| Defendant | |

I, James McNair Thompson, declare:

1. On July 11, 2017, I was appointed to represent the defendant herein, Misako Yamaguchi, in connection with her motion to set aside her plea and vacate her conviction.

2. On October 10, 2017, the Court directed counsel for both parties to file such declarations as they would like the Court to consider in ruling on the defendant's motion for an evidentiary hearing in her effort to withdraw her plea.

3. On October 9, 2017, I spoke to Carl Lindstrom, an attorney retained be defendant after judgment in this case. His declaration is being filed at the same time as this one. In brief, he advised me that when he asked Mr. Elliot, defendant's counsel at the time of the plea, what advise he had given the defendant about potential immigration consequences might arise from the plea in this case, Mr. Elliot replied that he did not think there were any.

4. The government has filed a declaration from Kirk Elliot, defendant's counsel at the time of the plea. Doc. 86. I file this declaration to supply statements by Mr. Elliot which are inconsistent with the specifics and with the implication of his declaration..

5. On October 9, 2017, I spoke to Mr. Elliot.

6. He stated that he discussed the immigration issues with the defendant on "multiple occasions." He stated that he advised her that she should assume she would be deported. However, he also stated that because her children were United States citizens, and she had property here it the United States, she would have a better chance than most of avoiding removal or deportation. He added that because she had a green care, "you never know, but she had a better argument [to avoid removal] than most." He concluded that "we were hoping that it wouldn't happen."

7. As the attached Declaration of Valerie Anne Zukin makes clear, defendant pled to an aggravated felony, which "eliminates one's eligibility for virtually every form of discretionary relief available under the immigration laws." (Zukin

Declaration of James McNair Thompson                                                    Page 2

Declaration ¶ 13) Far from having "a better argument [to avoid removal] than most," she had no argument to avoid removal.

8. Furthermore, Mr. Schenk has disclosed to me an email to him from Mr. Elliot dated October 10, 2017, in which he generally outlines testimony he could offer on the question of advice to defendant on the immigration consequences of her plea. He repeats his general claims to have advised about the immigration consequences of the plea on a number of occasions, and repeats his assertion that he advised her she should assume that she would be deported.

9. However, he concludes with a puzzling claim. "Finally, we discussed the immigration issues and consequences again before and during the preparation of my sentencing brief ( which is why I wanted EMP not jail !) and with the Judge on the record during sentencing." This is puzzling for three reasons.

10. In the first place, although he references "the preparation of my sentencing brief," his sentencing brief makes no mention of any immigration consequences of a plea to an aggravated felony. In fact, it assumes she *will not* be removed. He argues that "a very stable marriage (of 26 years), and a supportive family life" are mitigating factors (Doc. 14 4:3 – 4) and that she should be sentenced to home detention because her ill husband "relies on Ms. Yamaguchi's care around the home and for medical visits." Doc. 14 5:10.

11. In the second place, the distinction between an electronic monitoring program and a lengthy prison sentence has no bearing on the immigration consequences of a plea to an aggravated felony.

Declaration of James McNair Thompson Page 3

1  12. Finally, he contends that he "discussed the immigration issues and
2  consequences [...] with the Judge on the record during sentencing" The transcript
3  of the sentencing contains no such discussion "with the Judge on the record during
4  sentencing." I can find no reference to Ms. Yamaguchi's citizenship, immigration
5  status or impending automatic removal on account of her conviction of an
6  aggravated felony.

7  13. In fact, Mr. Elliot's discussion "with the Judge on the record during
8  sentencing" also appears to assume that the defendant *will not* be removed and
9  excluded from reentry. He argues that "if she is sent to prison, that's another 21
10  months, 27 months away from her family," (Doc. 24 18:15 – 17) but makes no
11  reference to the lifetime banishment from her family flowing from her conviction of
12  an aggravated felony. He argues that "her husband had quadruple bypass surgery.
13  He's still recuperating. He does require assistance. That would be a burden to take
14  her away from him at this point." This seems once again to miss the point that the
15  immigration consequences of the plea will permanently "take her away from him at
16  this point." (Doc. 24 19:14 – 17) In a further effort to avoid a prison term, he argues
17  that that the defendant "does have employment opportunities and I do have some
18  documentation."

19  14. Whatever Mr. Elliot's claims are with respect to advice he gave
20  defendant on the immigration consequences of her plea to an aggravated felony, it is
21  clear that he did not understand the automatic removal and exclusion consequences
22  of a plea to an aggravated felony, and therefore could not have advised her of those

Declaration of James McNair Thompson                                              Page 4

consequences. If his recollection of the advise he gave her is as faulty as his recollection of his "discuss[ion of] the immigration issues and consequences […] with the Judge on the record during sentencing," he should be afforded very little credibility.

15. Exhibit 1 filed at the same time as these declarations is a true and correct copy of the Elliot – Schenk emails.

16. Exhibit 2 is a true and correct copy of the sentencing memorandum filed by Mr. Elliot on defendant's behalf.

17. Exhibit 3 is a true and correct copy of the transcript of the sentencing proceedings.

I declare under penalty of perjury that the foregoing is true and correct; executed this 19th day October, 2017 at Los Gatos, California.

_____/s/_____

James McNair Thompson